J-S14010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DARYL ALLEN DUBS :
:
Appellant : No. 1165 MDA 2023

Appeal from the Judgment of Sentence Entered July 18, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002753-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.:                **FILED OCTOBER 01, 2024**

Daryl Allen Dubs appeals from the judgment of sentence, entered in the Court of Common Pleas of York County, after a jury convicted him of driving under the influence (DUI)—alcohol or controlled substance;[1] DUI—high rate of alcohol (BAC .10-.16), second offense;[2] DUI—Schedule I controlled substance (marijuana), second offense,[3] DUI—Schedule I, II, or III controlled substance metabolite (marijuana), second offense;[4] DUI—controlled substance impaired ability to safely drive;[5] and unauthorized use of

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] *Id.* § 3802(b).

[3] *Id.* at § 3802(d)(1)(i).

[4] *Id.* at § 3802(d)(1)(iii).

[5] *Id.* at § 3802(d)(3).

automobiles and other vehicles.[6] The trial court convicted him of the summary offense of driving under suspension—DUI related.[7] Dubs challenges the trial court's denial of his request for a jury instruction on the defense of necessity. Upon review, we affirm.

In the evening of March 26, 2022, Dubs and his friend, Aaron Weller, drove to the Bourbon Bar and Grill in Hanover. *See* N.T. Jury Trial, 7/11/23, at 184. Separately, Caitlin Bond (Caitlin), Kayla Schlossenberg, Timothy Bond (Caitlin's brother) (Timothy), and Tavon Spruell were also present in the bar that evening. *Id.* at 107-09. Weller and Schlossenberg had previously dated; thus, the parties were not socializing together. *Id.* at 111-13.

Later in the evening, the parties left the bar. *Id.* at 113. Weller testified at trial that Dubs and Weller left the bar first, with Schlossenberg following behind. *Id.* at 187-88. Shortly after Dubs and Weller reached Weller's truck in the parking lot outside the bar, Spruell approached them in an "aggressive" manner and hit Weller in the back of the head. *Id.* at 193-94. A fight ensued involving Spruell, Timothy, and Dubs. *Id.* at 195. Dubs attempted to leave the vicinity of Weller's truck but was blocked by both Timothy and Spruell. *Id.* at 192-94 (Weller testifying Dubs was standing at passenger door between truck and building wall and "didn't have any room" to avoid Spruell); *id.* at

---

[6] 18 Pa.C.S.A. § 3928(a).

[7] 75 Pa.C.S.A. § 1543(b)(1.1)(i).

215 (Dubs testifying he was "pinned" and "stuck" when Spruell and Timothy approached him).

Caitlin testified that, while also in the parking lot, she was in her car—a black Volkswagen Jetta—preparing to leave, when she heard, and then saw, Timothy and Spruell fighting Dubs and Weller. *Id.* at 99-100, 113-14. Caitlin stated that she exited her vehicle, left it running, and attempted to break up the fight. *Id.* at 100, 115-16.

While Timothy and Spruell were attacking Dubs, Dubs drew a knife from his person and stabbed/cut Spruell. *Id.* at 221-22. At that point, Timothy and Spruell retreated for a "brief moment" and Dubs attempted to "escape." *Id.* at 222-23. As Dubs was "leaving" the fight, he entered Caitlin's vehicle and locked the door.[8] *Id.* at 100, 197, 224-25. Dubs drove in circles before eventually crashing into the side of the bar and a pole. *See id.* at 102 (Caitlin testifying Dubs was "driving in circles around the parking lot at a fast pace"); *id.* at 103-05 (Caitlin testifying she, Spruell, and bystanders had to avoid path of car and Dubs drove "towards the crowd"); *but see id.* at 197-98 (Weller testifying Dubs driving in "circles to get away" before hitting pole, but no one in danger of being injured by car). Timothy then pulled Dubs from the car and began kicking Dubs. *Id.* at 198 (Weller testifying Timothy "ripped the door open, pulled [Dubs] out, [and] kicked him in the face"); *id.* at 117-18 (Caitlin testifying Dubs pulled from car, laying on ground, and bloody).

---

[8] There is no dispute that Caitlin **did not** give Dubs permission to use her vehicle. *See id.* at 106.

Law enforcement was dispatched to the scene and Hanover Borough Police Officer Zachariah Lloyd was the first to arrive. *Id.* at 128, 130. Officer Lloyd observed a black Jetta with its airbags "blown[,]" "pinned between a utility pole [on the driver's side] and the side of the building [on the passenger side]." *Id.* at 133, 130. Officer Lloyd observed Dubs on the ground immediately outside the car. *Id.* at 130. Dubs was groaning, but "otherwise unresponsive" and ultimately seen by medical personnel. *Id.* at 140-41 (Dubs was covered in blood and appeared to have severe injuries not consistent with car crash). Officer Lloyd interviewed witnesses, including Caitlin. *Id.* at 131-33, 146-47. Spruell was eventually detained and informed police that he had been stabbed. *Id.* at 138; 148-49 (Officer Lloyd testifying Spruell was walking away from scene when police arrived).

Dubs later had his blood drawn and tested, the results of which showed a blood alcohol concentration (BAC) of .15 and the presence of marijuana and marijuana metabolites. *Id.* at 135.

The jury and trial court found Dubs guilty of the above-mentioned offenses, and the trial court deferred sentencing for the determination of sentence ranges under the sentencing guidelines. *See id.* at 330-35. On July 18, 2023, the trial court sentenced Dubs to 3-12 months' incarceration for his unauthorized use conviction and 15-60 months' incarceration for his DUI— controlled substance impaired ability to safely drive conviction, to be served concurrently, as well as ordered him to pay fines, costs, and restitution. Dubs did not file any post-sentence motions.

- 4 -

On August 17, 2023, Dubs filed a timely notice of appeal. Both Dubs and the trial court have complied with Pa.R.A.P. 1925. Dubs presents a single issue for our review: "Whether the trial court erred when it denied Dubs' request to instruct the jury on the defense of necessity when the alleged facts justified the instruction?" *See* Appellant's Brief, at 2 (reworded).

Dubs argues that his actions were justified and that the trial court erred by not permitting a jury instruction for the defense of necessity. Specifically, Dubs contends that the jury instruction was warranted, as there was testimony that Dubs was faced with clear and imminent harm, that he could reasonably expect his actions would help avoid this harm, that there was no legal alternative to effectively abate this harm, and that such a defense was not precluded by the legislature. *See* Appellant's Brief, at 9-11. Dubs points to testimony that he was "cornered and beaten" and further pursued by Timothy and Spruell, that he attempted to leave the parking lot, that he only began driving the car to drive "away from his attackers[,]" and that he stayed in the parking lot to stop from making the situation worse. *Id.* at 11-13. Moreover, Dubs argues that there were no legal alternatives available to him and that he had "nowhere to go" once Timothy and Spruell began coming after him, as he could not run due to recent back surgery. *Id.* at 14.

In response, the Commonwealth argues that the trial court properly denied Dubs' request for a jury instruction on the defense of necessity. *See* Appellee's Brief, at 11. Specifically, the Commonwealth alleges that Dubs

could have entered Weller's truck to avoid greater harm or evil, and so he did not take the minimum actions necessary to avoid bodily harm. *Id.* at 12-14.

Our standard of review regarding the denial of jury instructions is "one of deference—an appellate court will reverse a [trial] court's decision only when it abused its discretion or committed an error of law." ***Commonwealth v. Galvin***, 985 A.2d 783, 798-99 (Pa. 2009). "When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were proper." ***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa. Super. 2014) (citation omitted). Jury instructions regarding crimes or defenses must be supported by the facts of the case. *See **Commonwealth v. Washington***, 692 A.2d 1024, 1028 (Pa. 1997). Further, the jury is presumed to follow the court's instructions. *See **Commonwealth v. Baez***, 720 A.2d 711, 722 (Pa. 1998).

Section 503 of the Crimes Code defines justification as follows:

**Justification generally.**

**(a) General rule.--**Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

**(b) Choice of evils.--**When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

18 Pa.C.S.A. § 503.

Our Supreme Court has stated that to be entitled to a jury instruction on the defense of justification or necessity, a defendant must show:

(1) that the actor was faced with a clear and imminent harm, not one which is debatable or speculative;

(2) that the actor could reasonably expect that the actor's actions would be effective in avoiding this greater harm;

(3) that there is no legal alternative which will be effective in abating the harm; and

(4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

***Commonwealth v. Capitolo***, 498 A.2d 806, 809 (Pa. 1985). Further, "it is essential that the offer [of evidence] meet a minimum standard as to each element . . . so that if a jury finds it to be true, it would support the affirmative defense . . . of necessity." ***Id.*** If the evidence supporting **any element** is insufficient, "the trial court has the right to deny use of the defense[.]" ***Commonwealth v. Billings***, 793 A.2d 914, 916 (Pa. Super. 2002) (quoting ***Capitolo***, 498 A.2d at 809). Finally, the burden lies with the defendant to proffer sufficient evidence to support each required element. ***See Commonwealth v. Manera***, 827 A.2d 482, 485 n.7 (Pa. Super. 2003).

The trial court determined that Dubs failed to establish the third element—that there was no legal alternative effective in abating the harm.

*See* Trial Court Opinion, 10/30/23, at 12. More specifically, the trial court pointed to Dubs' testimony that Dubs had access to Weller's truck during the altercation and, thus, the trial court determined that Dubs had a "clear opportunity to lock himself in his friend's pick-up truck[,]" but instead chose to run across the parking lot and get into and crash Caitlin's car. *Id.* at 12-14. The trial court noted Dubs' testimony that, while Spruell was attacking him, Dubs was using the interior of the passenger door of Weller's truck to hold himself up. *Id.* at 13; *see also* N.T. Jury Trial, 7/11/23, at 220-22. The trial court found this testimony indicated that the **legal alternative** was for Dubs to enter Weller's truck and lock the door, rather than flee from the area and enter Caitlin's car. *See* Trial Court Opinion, 10/30/23, at 14.

Dubs argues that the trial court "fails to recognize that there were two separate attacks[,]" the first near Weller's truck and the second when he was attempting to leave the premises. Appellant's Brief, at 13-14. Dubs states that the first attack ended after he stabbed Spruell and Spruell and Timothy stopped attacking Dubs. *Id.* at 13-14. The second attack, Dubs argues, began when he was attempting to "leave the premises" and Caitlin shouted out to Timothy and Spruell that Dubs was "going towards [her] car." *Id.* at 14; N.T. Jury Trial, 7/11/23, at 116. The second attack occurred once Timothy and Spruell began pursuing Dubs in the direction of Caitlin's car and hit the car after Dubs entered it. *See* Appellant's Brief, at 14. We are not persuaded by Dubs' argument.

Upon our review, we determine there is support in the record for the trial court's conclusion that Dubs failed to establish the third element to be entitled to a necessity jury instruction. **See Capitolo**, 498 A.2d at 809. Once Spruell and Timothy moved to the rear of Weller's truck, Dubs had the opportunity at that time to enter Weller's unlocked truck and safely remain inside the vehicle. **See** N.T. Jury Trial, 7/11/23, at 213 (Dubs testifying he opened passenger door to Weller's truck when he heard Weller yell to him); **id.** at 217-18 (Dubs testifying he used truck door handle/frame to help him stand up during attack); **id.** at 221 (Dubs testifying door of truck was open); **id.** at 197-98 (Weller testifying he was sitting in his truck while Dubs was driving Caitlin's car in parking lot); **id.** at 205 (Weller testifying he got into his truck once Timothy started to chase Dubs across parking lot).

Instead, Dubs "attempted" to leave the parking lot by walking away, even though he knew he would not be able to outrun Timothy or Spruell if they decided to pursue him. **See id.** at 225 (Dubs testifying he could not run due to back surgery and knew he could not outrun Timothy or Spruell). Moreover, rather than continue walking, Dubs got into Caitlin's running vehicle and locked the doors, confirming Caitlin's alarm that Dubs was "going towards [her] car[.]" **Id.** at 116, 224. We agree with the trial court's determination that Dubs failed to establish the third element to be entitled to a necessity jury instruction. Accordingly, the trial court did not abuse its discretion by denying Dubs' request for a jury instruction on the defense of necessity. **See Capitolo**, **supra**; **Billings**, **supra**.

- 9 -

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>10/01/2024</u>